**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

RYAN P.,                              )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )
                                      )     Case No. 4:24-CV-00391-CDL
FRANK BISIGNANO[1]                    )
Commissioner of the Social            )
Security Administration,              )
                                      )
          Defendant.                  )

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social

Security Administration (the "Commissioner") denying Social Security disability benefits.

The parties have consented to proceed before a United States Magistrate Judge in

accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **affirms** the

decision of the Commissioner.

**I.     Standard of Review**

The Social Security Act (the "Act") provides disability insurance benefits to

qualifying individuals who have a disability. *See* 42 U.S.C. § 423. The Act defines

"disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1]    Effective May 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank
Bisignano, Commissioner of Social Security, is substituted as Defendant in this action.
No further action need be taken to continue this suit by reason of the last sentence of
section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261–62).

So long as they are supported by substantial evidence, the agency's factual findings are conclusive. *Biestek*, 587 U.S. at 99; 42 U.S.C. § 405(g). The Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja*, 952 F.3d at 1178 (quoting *Knight*, 756 F.3d at 1175).

## II.    Background and Procedural History

On July 26, 2021, Plaintiff filed an application for disability insurance benefits ("DIB") alleging he has been disabled since June 30, 2019. R. 252. Plaintiff's claim of disability is premised on his schizoaffective disorder, bipolar disorder, generalized anxiety disorder, and major depressive disorder. R. 95, 291.

Plaintiff's application was initially denied on November 3, 2021, and it was denied again upon reconsideration on October 18, 2022. R. 20. An administrative law judge ("ALJ") held a hearing on June 15, 2023, and continued that hearing to September 28, 2023 so that Plaintiff could procure counsel. R. 44, 74. At the latter hearing, Plaintiff testified along with a vocational expert ("VE"), R. 44, and on October 17, 2023, the ALJ issued his decision finding that Plaintiff was not disabled. R. 17. Plaintiff appealed that same day, and the Appeals Council denied Plaintiff's request on June 21, 2024. R. 1. On August 23, 2024, Plaintiff filed a timely appeal in this Court, (Doc. 2), which has jurisdiction to review the ALJ's decision under 42 U.S.C. § 405(g).

## A.     The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (the "Listings"). At step four, Plaintiff must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant has the RFC to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2026, and that Plaintiff has not performed substantial gainful activity since his alleged onset date of June 30, 2019. R. 22. At step two, the ALJ determined that Plaintiff has severe impairments, including schizophrenia, major depressive disorder, and generalized anxiety disorder. R. 22.

At step three, the ALJ determined that Plaintiff's impairments do not meet or equal the severity criteria for any Listing, specifically referencing Listings 12.03, 12.04, and 12.06. R. 22–23. In considering Plaintiff's mental impairments, the ALJ addressed the "paragraph B" criteria, the four areas of mental functioning used to gauge a mental impairment's severity. R. 23. The ALJ found that Plaintiff has a moderate limitation in the first three of the "paragraph B" domains—understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace— and a mild limitation in the last domain, adapting or managing oneself. R. 23.

At step four, after considering the entire record, the ALJ determined that Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: simple and detailed but no complex tasks,
> repetitive, routine and rote. Occasional contact with coworkers and

supervisors, no contact with the general public; working with things rather than people. No strict production standards such as fast paced integral team assembly line work or processing. However, the hypothetical person could remain on task and attentive to duty for two hours before needing a 15-minute break.

R. 23. The ALJ indicated, that in making this finding, he considered all of Plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p, as well as medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520c. R. 24.

The ALJ found at step four that Plaintiff is unable to perform any past relevant work. R. 34–35. At step five, based on the VE's testimony as to a hypothetical person with Plaintiff's age, education, and RFC, the ALJ found Plaintiff can perform the requirements of representative occupations including:

- night cleaner, "medium" exertion unskilled work with a Specific Vocational Preparation ("SVP") of 2, with 67,000 such jobs in the national economy, DICTIONARY OF OCCUPATIONAL TITLES (DOT) CODE # 358.687-010;
- wall cleaner, "medium" exertion unskilled work with an SVP of 2, with 109,000 such jobs in the national economy, DOT CODE # 381.687-026);
- floor waxer, "medium" exertion unskilled work with an SVP of 2, with 109,000 such jobs in the national economy, DOT CODE # 381.687-034.

R. 35. Accordingly, the ALJ found Plaintiff is not disabled at step five. *Id.*

**B.    Plaintiff's Testimony Concerning His Symptoms**

At the September 28, 2023 hearing before the ALJ, Plaintiff testified that he struggles with severe depression, anxiety, hallucinations, and insomnia. R. 48.

He testified that he suffers from severe auditory hallucinations, such as hearing voices, but that they do not typically direct him to do anything. R. 51. Plaintiff has strong emotional reactions to these hallucinations, such as crying. R. 51–52. He also occasionally has visual hallucinations, generally occurring at the periphery of his vision, although he has experienced more intense hallucinations when he has had a high fever. R. 52. He experiences hallucinations almost daily. R. 61.

Plaintiff testified that he has severe mood swings and that the world induces panic within him. R. 55.  He has multiple panic attacks throughout the week, and almost never feels good about anything. R. 60. On average, Plaintiff stated he now gets about forty-five minutes to two hours of sleep each night, and that he has gone multiple days without sleeping. R. 60–61. His mental break caused him to seek emergency treatment, but he has refused more intense inpatient treatment for fear that his ex-wife would take his kids out of school if he did not consistently take them to school himself. R. 55–56. He experiences great emotional difficulty in getting his children to school, often having panic attacks before heading out the door or while on the road, which causes Plaintiff to pull over and regain his composure, occasionally causing him to throw up. R. 53–54. Plaintiff believes that his twice monthly counseling sessions have been helpful. R. 54. He is currently taking medications and receiving counseling with the goal of eventually being able to return to work. R. 61–62.

### C.    Medical Evidence

Plaintiff sought help for his mental health conditions on July 10, 2019. R. 409. Shawna McCalip, MD, noted that Plaintiff "presents with depression" and "has a long

history of depression." R. 409. That same day, Plaintiff established care with Gregory Hightower, MD, who recorded Plaintiff's conditions of anxiety, depression, sleep disturbance, panic, and nicotine dependence. R. 454. Dr. Hightower noted that Plaintiff was "not going to work due to breakdowns" and he started Plaintiff on fluoxetine and lorazepam. R. 454, 456. After a July 23 follow-up appointment, Dr. Hightower noted that Plaintiff's "panic is much improved" and that he was "not feeling overwhelming dread anymore," but that he was "still not where he can function and get his daily activities done." R. 450. At that appointment, Dr. Hightower started Plaintiff on buspirone. R. 452. On August 5, 2023, Dr. Hightower saw Plaintiff again. He stopped Plaintiff's lorazepam because it was not helping enough with Plaintiff's sleep disturbance and it caused Plaintiff to be too "zonked" the following day. R. 448. Dr. Hightower also stopped Plaintiff's buspirone because it made him hyperactive, instead starting him on xanax. R. 448. Plaintiff continued buspirone, and on August 15, Dr. Hightower noted that Plaintiff felt that "the buspar is helping better now with time." R. 445. But Dr. Hightower also noted that Plaintiff was "still struggling," and that he "[w]ants to return to work, but even with slightly increased home demands his panic and anxiety have flared." R. 445. On August 29, Dr. Hightower noted that all of Plaintiff's symptoms were worsening, and he started Plaintiff on Abilify. R. 442. On September 12, Dr. Hightower discontinued Plaintiff's buspirone and started him on clonazepam. R. 440.

It was not until October 1, 2019, that Dr. Hightower noted Plaintiff had been to psychiatry and "divulged to them that he has been having some auditory hallucinations and possible visual hallucinations for years, that have been worse with his anxiety/panic." R.

436. That day, Dr. Hightower started Plaintiff on alprazolam. The week earlier, Plaintiff's first psychiatry visit was September 25, 2019, with Kimberly Little, APRN-FNP, who started Plaintiff on trazadone to help him sleep. R. 393. Plaintiff reported his hallucinations to Little and that he has long felt like his life consisted of planned interactions similar to "a movie called the Truman show" R. 391.  James Hutchins, MD, reviewed Plaintiff's chart with Little and agreed with a diagnosis of schizoaffective disorder. R. 387, 395.

On October 15, 2019, Dr. Hightower noted that Xanax was not helping Plaintiff and that his anxiety was worsening. R. 434. However, he noted that Plaintiff was "[d]oing really well" with his depression and that Prozac had "helped significantly," and that his panic disorder was "[d]oing better overall." R. 434. At this appointment, Dr. Hightower noted that Plaintiff was "ready for return to work 10/21/19 as long as psych clears him for work. If work continues to be a trigger, I am not sure this qualifies as ongoing short term disability, but rather an incompatibility with work/life. Patient will consider if change of job would be more beneficial." R. 435. The next day, in an October 16, 2019 follow-up with Little, she observed that trazodone "was not very effective" in helping Plaintiff sleep and stopped it. R. 387. She also noted how Plaintiff suspected many of his symptoms may be related to ADHD and that he wanted to see if Adderall would help, and so she prescribed it to him. R. 387–89.

That next month, on November 14, 2019, Dr. Hightower noted that Plaintiff's anxiety and panic disorder were still worsening, and that Plaintiff might not be able to go back to work for months while doing a prolonged trial of an SSRI. R. 431. December 19, 2019, Dr. Hightower noted that Plaintiff was "[c]ooperative," "not depressed (improved),"

and that he had an "improved mood and demeanor in office (improved)" with congruent affect. R. 429. In his assessment, Dr. Hightower wrote that "I believe patient to be disabled at this point, and seeking disability is well within his rights and a good option until he is mentally and physically fit." R. 429.  Dr. Hutchins saw Plaintiff on December 23, 2019, and spoke separately with Plaintiff's wife, who reported she was controlling Plaintiff's medications after he had been overusing them. R. 380. Dr. Hutchins noted that Plaintiff "freely admitted he was having difficulties and recognized that he was bipolar and currently in a manic state," and so Dr. Hutchins prescribed him Depakote to treat his newly diagnosed bipolar disorder. R. 380–81. In a subsequent February 4, 2019 appointment with Dr. Hightower, that doctor wrote that Plaintiff "[doesn't] remember depakote or taking it, [but is] willing to," and he also prescribed that medication. R. 426.

Plaintiff began receiving care from Grand Lake Mental Health ("Grand Lake") in early 2020; before intake, Plaintiff was first reviewed by Robert Blasdel, LADC on January 16, 2020, who reported Plaintiff "has been on several different medications and feels very frustrated that none of them have seemed to be helpful." R. 786. Grand Lake initiated cognitive behavioral therapy with Plaintiff on February 28, 2020. R. 1182.  Angela Rhoten, ARNP started Plaintiff on Lamictal on March 17, 2020. R. 1269. Plaintiff had an April 2, 2019 appointment with Dr. Hightower, who noted that Plaintiff thought Lamictal was "helping him be more stable." R.  421. However, Plaintiff's panic disorder was still "functionally limiting"; he still suffered hallucinations; and he was still experiencing poor sleep. R. 421. On May 4, 2020, Grand Lake informed Plaintiff to stop Prozac and to start Lexapro. R. 768. A few weeks later, on May 22, 2020, Dr. Hightower noted all of Plaintiff's

conditions as improving except for sleep disturbance, and so he started Plaintiff on Seroquel to help him sleep. R. 803.

On October 2, 2020, David McElwain, MD with Grand Lake wrote that Plaintiff slept well with Seroquel, and although Plaintiff still had auditory hallucinations of his name being called, he reported having "less super high days or down days." R. 1365. Four months later, on February 3, 2021, Julie Finney, PA-C wrote that Plaintiff no longer believed that Seroquel was working or that Lexapro was doing enough for him. R. 1197. At that appointment, Plaintiff reported 6-7 hours of sleep a night with occasional nightmares, and that he still had mild hallucinations.  R. 1197. He reported his anxiety between six and seven out of ten, and his depression as seven out of ten. R. 1197. On April 20, 2021, Dr. McElwain prescribed Plaintiff gabapentin for anxiety, Remeron for sleep, and Paxil for both depression and anxiety, and he continued to prescribe Seroquel for Plaintiff's anxiety and Lamictal for his mood swings. R. 1356. At a July 29, 2021 appointment, Dr. McElwain's report showed notable improvement: Plaintiff rated his depression as three out of ten and his anxiety as five out of ten, and that Plaintiff slept six to seven hours a night with no nightmares. R. 1353. However, Plaintiff's wife reported that he was taking double his dosage of gabapentin, and Plaintiff agreed to permit his wife to control his medications, otherwise "he was to be put in the hospital." R. 1353.

Plaintiff's next couple of years of treatment at Grand Lake indicate he suffered anxiety in taking care of his kids in coordination with who was then his ex-wife. *See* R. 1580, 1592 (regarding statements made to Rachel Asbury, LPC in the September and October of 2022 about Plaintiff's concern he would be unable to see his kids.) He reported

10

getting two to four hours of sleep a night throughout this time. *See* R. 1570. He still experienced auditory hallucinations. R. 1533. At his May 26, 2023 appointment, Sarah Neyman, LCSW documented that Plaintiff reported one to two hours of sleep a night with nightmares; difficulty with concentration, impulsivity, and organization; and further auditory and visual hallucinations. R. 1512.

### D.      Medical Consultant Review

Ryan Scott, Ph.D., reviewed Plaintiff's medical record to determine Plaintiff's residual functional capacity for Plaintiff's initial disability determination and for the determination on reconsideration. In his March 22, 2021 report, Dr. Scott determined that Plaintiff could "attend for two hour periods with routine breaks and pace and persist for 8-hour workday and 40 hour workweek despite psychological symptoms." R. 88. He further commented on Plaintiff's "paragraph B" criteria, finding mild limitations in understanding, remembering, or applying information and adapting or managing oneself, and finding moderate limitations in Plaintiff's ability to interact with others and to concentrate, persist, or maintain pace. R. 88. In his October 18, 2022 report, Dr. Scott gave largely the same assessment for Plaintiff's ability to work throughout the week and his paragraph B criteria. R. 113–14. However, Dr. Scott further noted that Plaintiff was "unable to perform complex duties that involve in-depth multilayer decision-making or supervisory tasks, or perform tasks that require facts, figures, or abstract ideas at a high level of complexity, the health or safety of others, or fiduciary responsibilities." R. 113–14. Dr. Scott also added that Plaintiff "will have difficulty maintaining concentration for complex tasks," that he will

"experience some lapses on some tasks that require sustained attention," and that he "can only tolerate incidental/occasional public contact." R. 114.

## III.   Discussion

Plaintiff argues that two errors in the ALJ decision each warrant reversal: first, that "[t]he ALJ's findings as to the Plaintiff's Residual Functional Capacity are not supported by substantial evidence;" and second, that "[t]he ALJ's consistency findings are not based on substantial evidence." (Doc. 10 at 7).

### A.   The RFC is Supported by Substantial Evidence.

Plaintiff contends that the RFC is not supported by substantial evidence because "he did not follow the overwhelming evidence of disability in this case." (Doc. 10 at 8). In support of this argument, Plaintiff has cited various statements from the record made by medical sources regarding Plaintiff's state of disability. Specifically, Plaintiff contends that the ALJ erred by failing to "provide specific legitimate reasons for rejecting the opinions" of these medical sources. (Doc. 10 at 10).

An ALJ may only dismiss or discount a medical opinion if he provides "specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). This requirement does not apply to any statement by a medical source, but to "medical opinions," which are defined in pertinent part as

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities. . . . (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

12

20 C.F.R. § 404.1513(a)(2); *see Staheli v. Commissioner, SSA*, 84 F4th 901, 905 (10th Cir. 2023). The regulations clarify that this definition does not include "statements by a medical source reflecting judgments about the nature and severity of a claimant's impairments and [his] prognoses" as well as statements "on the ultimate issue of whether the claimant is or is not disabled or able to work." *Staheli*, 84 F.4th at 905–06 (citing 20 C.F.R. §§ 404.1513(a), 404.1520b(c)(3)). Such evidence is neither "valuable nor persuasive" and the ALJ is not required to consider it in forming his decision. *Id*.

While an ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record," 20 C.F.R. § 404.1520c(b), he is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id*. at § 404.1520c(b)(1). In ascribing weight to a medical source's opinions, the only two factors an ALJ must articulate are supportability and consistency. *Id*. at § 404.1520c(b)(2). Supportability is the degree of relevance between the medical source's objective medical evidence and supporting explanations to the medical opinion, whereas consistency refers to how consistent the medical opinion is with other sources in the claim. *Id*. at § 404.1520c(c)(1)–(2).

Of the medical source statements Plaintiff provides to assert that the ALJ did not support his RFC with substantial evidence, many such statements speak to "the ultimate issue of whether the claimant is or is not disabled or able to work" and are therefore of no value to the ALJ in forming his decision. 20 C.F.R. § 404.1520b(c)(3). These statements

13

include Dr. Hightower's opinions "regarding plaintiff's inability to work" and Dr. Dlugash's opinion that "plaintiff was disabled for Long Term Disability." (Doc. 10 at 9). Further, Dr. Roger's opinion that "prognosis for improvement in the future is poor" and that Plaintiff would be unlikely to "be able to manage his symptoms when working under stress and pressure" is both prognosis and judgment on the nature and severity of Plaintiff's impairments, neither of which constitute "medical opinions" that the ALJ is required to articulate his reasons for accepting or rejecting. 20 C.F.R. 404.1520b(c)(3).

What remains are the statements by Drs. Hightower and Mallgren regarding Plaintiff's "applied focus and concentration." (Doc. 10 at 9). A medical source statement that a patient can only concentrate for a limited period of time falls under the definition of a medical opinion, as such a statement may regard "what [Plaintiff] can still do despite" an "impairment related limitation[] or restriction[]" in "maintaining concentration." 20 C.F.R. § 404.1513(a)(2). However, the medical evidence Plaintiff cites does not appear to state such a limitation. Two of the documents cited are pages from physician-completed forms for Plaintiff's employer's disability determination. R. 625, 1042. The referenced portion of the forms states, "[a]pplied focus and concentration in session for periods of," followed by checkboxes corresponding to time intervals ranging from fifty minutes to less than five minutes. R. 625, 1042. Dr. Hightower checked the box indicating "5 to 10 minutes," R. 625, and Dr. Mallgren checked the box indicating "15 to 30 minutes." R. 1042. Further, Dr. Mallgren wrote in a separate document that "[Plaintiff] reported on-going symptoms that impact his ability to complete work tasks, including ability to focus and concentrate for periods lasting only 15 to 30 minutes." R. 997.

14

In reviewing the two employer disability determination forms, the physician's statements consisting of checking boxes about applied focus and concentration do not appear to constitute medical opinions on what the Plaintiff can still do despite his impairments. Notably, that the physician's statements were made through checkbox forms is not dispositive of whether they are valid medical opinions or whether they can be validly disregarded. *See Gonzales v. Kijakazi*, No. CV 21-111 CG, 2022 WL 1664401, at *10 (D.N.M. May 25, 2022) (unpublished) (citing *Chapo*, 682 F.3d at 1289).  However, the content of the forms includes medical observations from discrete examination sessions, not as opinions stating limitations in general. The relevant query on both forms is worded, "Applied focus and concentration in session for periods of," followed by checkboxes for different time intervals. R. 625, 1042. The subsequent question is similar: "Expressed his/her current circumstances and responded to direct questions appropriately," followed by checkboxes for "yes" and "no." R 625, 1042. Both facially and in the context of each other, these queries prompt the physician to relate evidence of a patient's behavior during a single session; they do not ask for an opinion on a patient's current ability to perform the evaluated actions despite the patient's impairments. Consequently, the statements Drs. Hightower and Mallgren made in filling these checkboxes are not medical opinions, but rather observations that serve as medical evidence. The ALJ may have been required to consider these statements in forming his decision, but he was not required to articulate his reasons for accepting them or rejecting them as he would a medical opinion.

Dr. Mallgren's textual statement is similarly not a medical opinion that requires ALJ articulation. That statement reads, "[Plaintiff] reported on-going symptoms that impact his

15

ability to complete work tasks, including ability to focus and concentrate for periods lasting only 15 to 30 minutes." This statement is not the doctor's opinion on what Plaintiff can do despite his impairments. Instead, the doctor is relaying the Plaintiff's own statements to that effect. Without more, the statement is not a medical opinion that the ALJ was required to articulate how he considered it in his decision. *See Street v. Berryhill*, No. CIV-18-105-G, 2019 WL 1330929, at *5 (W.D. Okla. March 25, 2019) (unpublished) (finding that statement from medical source was not a medical opinion where medical source was only recording "Plaintiff's own description of his alleged mental problems" rather than opining on them directly).

Finally, Plaintiff generally alleges that the ALJ failed to "follow the overwhelming evidence of disability in this case." (Doc. 10 at 8). Notably, Plaintiff has not attacked the ALJ's findings directly. To do so, Plaintiff would have had to contend that the ALJ did not rely on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja*, 952 F.3d at 1177. Instead, Plaintiff has directed the Court's attention beyond the ALJ's own findings. He contends that the ALJ "did not follow the overwhelming evidence of disability" as the "record is replete with findings of disability by both treating and non-treating physicians" that the ALJ failed to follow. (Doc 10 at 8). In essence, Plaintiff appears to contend that the evidence the ALJ relied on "is not substantial [because] it is overwhelmed by other evidence in the record." *Noreja*, 952 F.3d at 1178. However, Plaintiff's argument is unsuccessful. As discussed, the "findings of disability" Plaintiff refers to are of no value to the ALJ in forming his decision. *See* 20 C.F.R. § 404.1520b(c)(3)(i) (ascribing no value to statements that a claimant is disabled as

issue of disability is reserved to the Commissioner). And while Plaintiff does point to valid medical evidence relating to Plaintiff's applied focus and concentration in isolated examination sessions, (Doc. 10 at 9), that evidence does not "overwhelm" the ALJ's own findings—these statements are not medical opinions that the ALJ was required to accept or reject. As a result, Plaintiff has not shown that the ALJ's RFC findings are overwhelmed by other evidence in the record. Plaintiff has not attacked those findings for any other deficiency, and so the Court finds that the ALJ's RFC findings are supported by substantial evidence.

> **B.      The ALJ's Consistency Findings are Supported by Substantial Evidence**

Plaintiff further contends the ALJ erred in assessing the consistency between Plaintiff's own testimony about the "intensity, persistence, and limiting effects" of his symptoms with other evidence in the record.[2] (Doc. 10 at 11). The ALJ found that Plaintiff's statements were inconsistent because Plaintiff "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 25. The ALJ noted Plaintiff

> can go and pick up his children and take them to school. He performs household chores such as vacuuming, doing the dishes, laundry, and cleaning the floors and counters. He feeds himself and his children daily. . . . He goes shopping, drives a vehicle and is able to pay the bills and handle a bank account.

---

[2]      The consistency analysis Plaintiff refers to was previously known as the "credibility" analysis, but the terminology changed when SSR 16-3p superseded SSR 96-7p. *See Verlinda C. J. v. O'Malley*, No. 22-CV-554-JFJ, 2024 WL 288992, at *3 n.2 (N.D. Okla. January 25, 2024). Nonetheless, the Tenth Circuit has noted that decisions on credibility are persuasive in ruling on issues of consistency. *See id.* (citing *Brownrigg v. Berryhill*, 688 F. App'x 542, 545–46 (10th Cir. 2017) (unpublished)).

R. 25. The ALJ further noted that "there are inconsistencies regarding the claimant's limitations and the objective medical evidence," R. 25, after which he provided a summary of the medical evidence in the record. R. 25–33.

In determining whether a claimant is disabled, an ALJ must consider a claimant's "statements about the intensity, persistence, and limiting effects of [the claimant's symptoms," taking into account "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." *See* 20 C.F.R. § 404.1529(c)(4). Consistency determinations "are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). An ALJ's findings as to consistency "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* Where the ALJ's consistency findings are affirmatively linked to substantial evidence, the Court may not reweigh the evidence to substitute its own judgment for that of the ALJ. *Id.*

Plaintiff gives three specific points of error in the ALJ's consistency findings: first, Plaintiff argues that the ALJ failed to consider several "factors" to determine Plaintiff's non-exertional impairments were non-disabling, (Doc. 10 at 11); second, Plaintiff argues that the ALJ's consistency findings are "based on the ALJ's selective determination of the facts," (Doc. 10 at 13); and third, Plaintiff claims the ALJ failed to follow guidance from Listing 12.00. (Doc. 10 at 14).

18

Plaintiff's first argument is unavailing. Specifically, he contends that the ALJ failed to assess four factors in making his consistency findings:

a.) the claimant's attempts to find relief and willingness to try any treatment prescribed;

b.) claimant's regular contact with a doctor;

c.) the claimant's daily activities; and

d) the dosage, effectiveness, and side effects of the claimant's medication.

(Doc. 10 at 13 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012))). However, the ALJ is not required to assess any one particular factor in determining consistency: reading just past the language Plaintiff cites in *Keyes-Zachary*, the Tenth Circuit's opinion reads, "But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.' Again, common sense, not technical perfection, is our guide." *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)); *see also Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 843 (10th Cir. 2020) (unpublished) (noting that "an ALJ is not required to specifically discuss every factor in reaching a credibility determination"). As discussed above, the ALJ did set forth the evidence he relied upon in evaluating the consistency of Plaintiff's statements: he specifically relied on Plaintiff's daily activities, including taking his children to school and feeding them, and the ALJ also provided extensive discussion of the medical evidence in the record. R. 25–33. Plaintiff's first argument does not establish that the ALJ's consistency analysis lacked an affirmative link to substantial evidence.

Plaintiff's second argument is also unsuccessful for much the same reason as Plaintiff's argument against the ALJ's RFC findings: Plaintiff asks this Court to impermissibly reweigh the evidence. Plaintiff broadly asserts that "[t]he ALJ's 'consistency findings' are based on the ALJ's selective determination of the facts," and that "[t]he ALJ's above-statements [about consistency] are just conclusions without any basis." (Doc. 10 at 13–14). These arguments echo Plaintiff's earlier contention that the ALJ failed to consider the replete "findings of disability in this case," (Doc. 10 at 9), except in making his argument here, Plaintiff does not specify what facts the ALJ selectively rejected. Presumably, Plaintiff is referring to the many "findings of disability" that he argues "overwhelm" the ALJ's findings for crafting his RFC. (Doc. 10 at 8). As discussed, these findings are of no value to the ALJ in determining the Plaintiff's status as disabled or non-disabled, and so that argument cannot prevail.

Plaintiff lastly asserts that the ALJ failed to follow an excerpt from the Social Security Listings noting that "[t]he fact that you have done, or currently do, some routine activities without help or support does not necessarily mean that you do not have a mental disorder or that you are not disabled" and that "[y]our daily functioning may depend on the special contexts in which you function," that is, what a claimant is capable of in a highly structured setting may not reflect what a claimant is capable of in a work setting.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(D)(3)(a)–(b). Plaintiff appears to argue that, because the ALJ did not follow this guidance when using Plaintiff's daily activities to determine the consistency of Plaintiff's testimony, the ALJ's findings are "not complete and are not based on substantial evidence." (Doc. 10 at 15).

It is unclear the extent to which the ALJ was required to "follow" the statement Plaintiff cites for purposes of assessing the consistency of Plaintiff's statements about the intensity, persistence, and limiting effects of his symtpoms. Plaintiff cites a part of the regulations that is referred to as "the Listings," which the Commissioner uses to determine if the claimant's impairments are among those that are so inhibiting as to permit a finding of disability without needing to determine the claimant's RFC. *Williams*, 844 F.2d at 751; *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ discussed the consistency of Plaintiff's testimony as a part of evaluating Plaintiff's symptoms as per 20 C.F.R. § 404.1529. That regulation notes that evidence concerning the intensity, persistence, or limiting effects of a claimant's symptoms is generally not necessary when determining that the claimant meets a Listing, and that such evidence cannot substitute for a "missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment." 20 C.F.R. §§ 404.1529(d)(2)–(3). It unclear to the Court how guidance in the Listings regulations concerns the ALJ's consistency findings.

Nonetheless, the Tenth Circuit has similarly held that an ALJ cannot "rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain," or in this case, a non-exertional mental impairment. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (quoting *Thompson v. Sullivan*, 987 F.2d 1482,1490 (10th Cir. 1993)). The key distinction between the relevant precedent and the current case, however, is that the ALJ did not rely on "minimal" daily activity in articulating his consistency assessment. In *Hamlin*, the ALJ erred where he "determined that Mr. Hamlin's television watching constituted an activity requiring 'significant attention and

concentration. . . inconsistent with severe and intractable pain.'" *Id*. In *Thompson*, the ALJ erred in finding the claimant's complaints of pain noncredible because she "undertook minimal daily activities such as visiting neighbors and doing light housework." *Thompson*, 987 F.2d at 1489. The Thompson court found that "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Id*. 1490 (quoting *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987)). In contrast, the ALJ in the present case found Plaintiff's complaints to be inconsistent not only because of his ability to do housework and complete other minimal tasks necessary to care for himself, but also because of the daily[3] care he independently provides to his children who normally live with his ex-wife, care that includes picking them up, feeding them, and taking them to school. R. 25. The ALJ also noted that Plaintiff "sometimes takes them back at night" and that "[h]e occasionally attends school functions." R. 24. Plaintiff's daily activity, as described by the ALJ and supported with evidence in the record, goes beyond activity that is too "minimal" or "sporadic" to constitute substantial evidence inconsistent with Plaintiff's testimony about his symptoms. Consequently, the ALJ relied on substantial evidence in determining that the Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with his daily activities. The Court may not reweigh the evidence to reach a different result.

---

[3]    Plaintiff contends that "it is unlikely that Plaintiff, every day, engages in all the activities the ALJ identified." (Doc. 10 at 14). However, nowhere does the ALJ appear to understand or assert that this is the case, nor does there appear to be any authority to suggest that the Commissioner must under understand "daily activities" to refer to activities a Plaintiff engages in, without fail, literally every day.

## IV.    Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and correctly applies the applicable legal standards. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **affirmed.**

**SO ORDERED** this 31st day of March, 2026.

Christine D. Little
United States Magistrate Judge